UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

EH FUSION PARTY, DAVID GRUBER, BONNIE
BRADY, ELIZABETH A. BAMBRICK, RONA S.
KLOPMAN, DELL R. CULLUM, RICHARD P.
DREW, II, SUSAN M. VORPHAL, STEPHEN M.          MEMORANDUM AND ORDER
LESTER, DAVID TALMAGE, FALLON NIGRO,
MICHAEL HAVENS, and SIMON V. KINSELLA,          19-CV-3511 (KAM)(SJB)

                    Plaintiffs,


               -against-


SUFFOLK COUNTY BOARD OF ELECTIONS,
COMMISSIONER ANITA S. KATZ, and
COMMISSIONER NICK LALOTA,

                    Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

          On June 13, 2019, plaintiffs, the EH Fusion Party[1],

David Gruber, Bonnie Brady, Elizabeth A. Bambrick, Rona S.

Klopman, Dell R. Cullum, Richard P. Drew II, Susan M. Vorphal[2],

Stephen M. Lester, David Talmage, Fallon Nigro, Michael Havens,

---

[1] The EH Fusion Party is not an established "party" as defined by N.Y. Elec.
Law § 1-104(3). Instead, it is an "independent body," which is any
nominating organization or group of voters that is not a party as defined by
Section 1-104(3). N.Y. Elec. Law § 1-104(12). EH Fusion Party refers to the
12 named individual plaintiffs, as well as 3 non-plaintiffs: Lisa R. Rana,
Jill Massa, and Jeanne W. Nielsen. (ECF No. 24-49, Def. Resp. to Pl. 56.1 ¶¶
1-2.) An additional individual, Stephen Lynch was associated with the EH
Fusion Party, but he ultimately declined his nomination and plaintiffs do not
refer to him as a non-plaintiff member of the EH Fusion Party. (ECF No. 24-
5, Lynch Substitution Letter; ECF No. 24-49, Def. Resp. to Pl. 56.1 ¶¶ 1-2.)
[2] The court notes that although the caption and some of the parties' filings
refer to this plaintiff's last name as "Vorphal," others filings spell the
name as "Vorpahl." There is no indication that these are separate
individuals.

1

and Simon Kinsella brought this action against defendants, the
Suffolk County Board of Elections ("the Board"), Commissioner
Anita S. Katz, and Commissioner Nick LaLota.  (ECF No. 1.)
Plaintiffs argue that New York's election law requirement, N.Y.
Elec. Law § 6-146(1), that candidates nominated by independent
bodies, multiple parties, or parties in which they are not
members file certificates of acceptance or have their
candidacies declared invalid, *see* N.Y. Elec. Law § 1-106(2),
violates their due process, equal protection, and First
Amendment rights.  (ECF No. 1, Compl. at 7-9.)  The plaintiffs
also argue that defendants violated New York's election law by
failing to accept plaintiffs' certificates of substitution after
their candidacies were found invalid for failure to comply with
Elec. Law § 6-146(1).

        Pending before the court are plaintiffs' motion for
summary judgment, and defendants' motion for summary judgment or
for a stay and/or abstention in the alternative.  For the
reasons set forth below, the court denies defendants' motion for
abstention and/or a stay, grants defendant's motion for summary
judgment, and denies plaintiffs' motion for summary judgment.

**BACKGROUND**

## I.  Factual Background

        The facts in this section are taken from the parties'
Rule 56.1 statements, responses to 56.1 statements,

2

declarations, affidavits, and exhibits in support of the
parties' motions and are considered in the light most favorable
to the non-moving party.  The facts presented are pared down to
those relevant and material to understanding what occurred for
purposes of applying the relevant law.  Although there are
asserted disputes of fact, those disputes concern facts
immaterial to resolving the legal issues presented regarding the
constitutionality of the election law or refer to assertions
that the court does not rely upon because they are legal
conclusions, are unsupported with any evidence, or the evidence
proffered would be inadmissible or is otherwise defective.

On or about May 21 and May 28, 2019, independent
nominating petitions for the EH Fusion party were timely filed
with the Suffolk County Board of Elections by plaintiff Rona
Klopman.  (ECF No. 23-16, Pl. Resp. to Def. 56.1 ¶ 1; ECF No.
24-49, Def. Resp. to Pl. 56.1 ¶ 9.)  The petitions listed all of
the individual plaintiffs, as well as Stephen K. Lynch, Jill
Massa, Lisa Rana, and Jeanne Nielson.  (*See, e.g.*, ECF No. 24-
16, Designating and Independent Petitions Cover Sheet – EH
Fusion Party Volume 1 at 100; *id.* Volume 2 at 1.)  On May 21,
2019, the board sent notice letters to "accept or decline" an EH
Fusion nomination to each person listed in the filed petitions,
except for Lisa Rana.  (ECF No. 24-2, Accept or Decline
Letters.)  The letters "notified [the plaintiffs] that

nominations ha[d] been submitted in [plaintiffs'] name[s] by the EH Fusion party[.]" (*See, e.g.*, *id.* at 1.) The notices expressly stated that they were "not a statement of the validity of said nomination[.]" (*Id.*) The letters also stated that the "last day to **Accept OR Decline** such nomination is **Friday, May 31, 2019.**" (*Id.* (emphasis in original).) Rana, as a judicial nominee, received only a decline letter. (ECF No. 24-6, Rana Letter ("The last day to **Decline** such nomination is Friday, **May 31, 2019.**") (emphasis in original).)

Although the court does not rely on either side's assertions about the interactions of the parties regarding the filing of nominating petitions, the court describes the party's views of what occurred when plaintiff Klopman filed the petitions. In her declaration, Klopman states that she visited the Board's office on May 21, 2019 to file the EH Fusion Party's petitions and met with Debbie Monaco, who represented the Democratic Party, and Rose Ann Weis, who represented the Republican Party. (ECF No. 24-29, Klopman Decl. ¶ 19.) Klopman states that she "asked if any further filings or formalities were necessary, and [she] was told that they were not." (*Id.* ¶ 20.)

During a second visit on May 28 to drop off additional petition signatures, Klopman met Weis again, along with James Anthony, who represented the Democratic Party. (*Id.* ¶ 21.)

Klopman says that she "asked if there was anything else [she] had to know about the filing because [she] felt responsible for [the] signatures and wasn't leaving until they told [her] everything was perfect." (*Id.* ¶ 22.) Klopman says she asked Weis and Anthony if she "needed to do anything more for [her] candidates, or tell them anything, or if there were any further formalities," to which they said no and that she and her candidates were "good to go." (*Id.* ¶ 31.) She also states that she asked a third employee who was present on May 28 if everything was "good" and that this third employee said everything was good, and that the only challenge to the petitions would be if any of the signatures were found to be fraudulent. (*Id.* ¶ 28.)

Klopman summarized her experiences by stating that she "had been to the BOE twice, and asked whether additional paperwork was required both times[.]" (*Id.* ¶ 28.) Klopman noted that in all of her conversations with Board staff, "no one so much as mentioned in response to her inquiries that [the EH Fusion members] were required to file Certificates of Acceptance or do anything else for [their] nominations to be valid." (*Id.* ¶ 32.) Klopman described these conversations as "consistent and uniform representations of at least four different BOE employees that no further paperwork was required for [the] nominating petitions to successfully place [their] candidates on the EH

Fusion Party ballot line, and that the only real challenge available to [their] Petition would be by challenging [the] signatures." (*Id.* ¶ 33.)

The defendants present a different view of these interactions. Deborah Monaco, the Senior Assistant Commissioner who reports to defendant Commissioner Anita Katz, states in an affidavit that she and Rose Ann Weis were asked by plaintiff Klopman on May 21, 2019 whether Klopman needed to file anything else for the petitions to be accepted. (ECF No. 24-48, Klopman Aff. ¶¶ 1, 8.) Monaco states that she and Weis informed Klopman that they would provide her with a copy of the first page of the petitions and cover sheet as proof of filing. (*Id.* ¶ 8.) She denies that Monaco asked whether any other documents or formalities were necessary or that she offered any information regarding any other documents or formalities. (*Id.* ¶ 9.) She further stated that if so asked, she would have informed Klopman that she was not permitted to give such legal advice or guidance. (*Id.* ¶ 9.) Rose Ann Weis, the Republican Executive Director for the Board, recounted the May 21, 2019 interaction with Klopman in the same manner as Monaco did. (ECF No. 29-1, Weis Aff. ¶¶ 1, 8-10.)

James Anthony, an assistant to Commissioner Katz, states in his affidavit that Klopman asked Weis and him on May 28, 2019 whether she needed to file anything else to make sure

6

that the additional petition signatures would be added to the
first set of petition signatures filed on May 21, 2019.  (ECF
No. 29-2, Anthony Aff. ¶¶ 1, 7.)  Anthony and Weis reviewed the
cover sheet and advised Klopman that the papers would be
considered a second volume of signatures.  (*Id.* ¶ 7.)  Anthony
denied that Klopman asked whether she needed to do "anything
further for her candidates," "tell them anything," or "if there
were any other formalities."  (*Id.* ¶ 10.)  Weis's recollection
is the same as Anthony's.  (ECF No. 29-1, Weis Aff. ¶¶ 11-13.)

Commissioner LaLota has identified himself as the
third person Klopman spoke with on May 28.  (*See* ECF No. 24-47,
LaLota Decl. ¶ 14.)  He recalls telling Klopman that the number
of signatures the EH Fusion Party had gathered for the petition
well-exceeded the number required, but states that he never
expressed that the number of valid signatures was the sole
criteria to be considered for the petition's candidates to
ultimately be granted access to the November 2019 ballot.  (*Id.*
¶ 14.)  LaLota stated that the "person who was submitting the
petitions did not ask, nor did [he] offer, anything about other
relevant election documents—such as Acceptances, which would be
against the Board's policy of not providing legal guidance or
advice to any individual concerning compliance with Election Law
requirements whether in person, or by phone."  (*Id.*)

Although the court rejects the parties' hearsay offerings regarding the conversations at the Board's office and need not rely on the substance of those conversations to resolve this issue, the court is aware of an exchange that is consistent with defendants' position that the Board and its employees do not provide legal advice regarding compliance with the election law. On April 26, 2019, plaintiff Gruber emailed defendant Commissioners Katz and LaLota with questions regarding independent nominating petitions for the "EH Fusion Party (a new independent body seeking a ballot line)[.]" (ECF No. 24-41, Def. Ex. J.) Katz responded that because she and LaLota would have to rule on the petitions if challenged, they "[could] not give . . . legal advice." (*Id.*) Katz advised Gruber to "contact a private attorney and or review the New York State Board of Elections website which has information regarding independent petitions." (*Id.*)

Regardless of the events surrounding the filing of the EH Fusion Party petitions, after the Board sent the plaintiffs accept or decline notices on May 21, 2019, none of the plaintiffs filed acknowledged certificates of acceptance. Plaintiff Kinsella filed a letter seeking to accept the nomination, but it was not acknowledged as required by the election law. (ECF No. 24-4 at 8, Kinsella Letter.) Non-plaintiff Stephen Lynch filed a letter declining his EH Fusion

nomination.  (*See* ECF No. 24-5, Lynch Substitution Letter; *see also* ECF No. 24-49, Def. Resp. to Pl. 56.1 ¶ 83 (explaining that Lynch's declination was postmarked May 31, 2019, but received on June 3, 2019, which is why the Lynch Substitution Letter is dated June 4, 2019).)  In her declaration, Klopman offers hearsay that she "under[stood] that [Lynch] declined [the EH Fusion] nomination after being told, in sum and substance, if he accepted the EH Fusion Party nomination, he would never receive the Democratic Party nomination again."  (ECF No. 24-29, Klopman Decl. ¶ 39.)

On June 5, 2019, the Board declared the plaintiffs' petitions invalid because the plaintiffs did not file duly signed and acknowledged acceptances.  (ECF No. 24-14, June 5, 2019 Board Minutes.)  On June 5, 2019, the Board sent letters notifying the plaintiffs that the nominating petitions were "declared to be invalid."  (*See, e.g.*, ECF No. 24-7, Invalidity Letters at 1.)  On June 7, June 10, and June 11, 2019, the plaintiffs filed certificates of substitution by committee to fill vacancies, attempting to substitute themselves as candidates for the same offices for which they were originally nominated.  (ECF No. 24-15, June 13, 2019 Board Minutes.)  On June 13, 2019, the Board ruled that no vacancies were created by invalidation of the independent nominating petitions and that,

for the sake of argument, the same candidates could not be named as substitute. (*Id.*)

Defendants note, and plaintiffs do not dispute, that each plaintiff previously filed certificates of acceptance for nominations for other political parties of which they were not members. (ECF No. 23-16, Pl. Resp. to Def. 56.1 ¶ 5.) Plaintiffs, however, "dispute that plaintiffs filed any certificates knowingly or understanding anything other than, in essence, 'I am signing the party paperwork.'" (*Id.*) *But see* ECF No 24-34, Certificates of Acceptance at 1-2 (Gruber filled out and executed acknowledged certificates for the Independence and Republican parties); at 3 (Brady did the same for the Republican and Independence parties); at 4, 6 (Klopman did the same for the Republican, Independence, Working Families, and Conservative parties); at 5 (Drew did the same for the Democratic, Republican, and Independence parties); at 7 (Vorpahl signed an acknowledged pre-filled acceptance form for designations for nominations for the Democratic, Conservative, Independence, Green, Working Families, Libertarian, and SAM parties); at 8 (the same for Talmage); at 9 (the same for Nigro); at 10 (the same for Bambrick); and at 11 (the same for Havens); ECF No. 24-18, Pl. Ex. 15 at 584-610 (containing signed, acknowledged certificates of acceptance for the plaintiffs already mentioned and plaintiffs Cullum and Lester).

The candidate list (ECF No. 23-14) establishes that all the plaintiffs, except Kinsella, who failed to file an acknowledged certificate of acceptance, and Gruber, who declined the Democratic party nomination, will be on the ballot with the following associations:

- Brady: Conservative, Independence
- Bambrick: Conservative, Independence
- Drew: Democratic, Conservative, Independence
- Klopman: Conservative, Working Families, Independence
- Lester: Conservative, Independence
- Cullum: Conservative, Independence
- Nigro: Republican, Conservative, Independence
- Vorpahl: Republican, Conservative, Independence
- Havens: Republican, Conservative, Independence
- Talmage: Republican, Conservative, Independence

The EH Fusion party affiliates who are not plaintiffs will be on the ballot with the following associations:

- Rana: EH Fusion, Republican, Conservative, Independence
- Massa: EH Fusion, Democratic, Republican, Conservative, Independence
- Nielsen: EH Fusion, Democratic, Conservative, Independence

Finally, Stephen Lynch, who declined his EH Fusion nomination will be on the ballot and associated with the Democratic, Conservative, and Independence Parties.

## II. Procedural History

On June 11, 2019, before this action was filed, plaintiffs commenced a proceeding in state court pursuant to

Election Law §16-102(2) which states, in part, that a
"proceeding with respect to a petition shall be instituted
within fourteen days after the last day to file the petition, or
within three business days after the officer or board with whom
or which such petition was filed, makes a determination of
invalidity with respect to such petition, whichever is later . .
. ." (*See* ECF No. 10-1, State Petition.)

The state petition asserts causes of action under the
New York Election Law, New York State Constitution, and United
States Constitution. (ECF No. 10-1, State Petition.) The case
was assigned to Supreme Court Justice Robert F. Quinlan. (ECF
No. 10, Def. Pre-Motion Conference Ltr. at 3.) Defendants filed
their opposition to the petition on June 19, 2019, and
plaintiffs served a reply affirmation on June 27, 2019, on which
date the matter was submitted to the state court for decision.
(ECF No. 23-15, Def. Memo at 4.)

On June 13, 2019, two days after the state action was
commenced, plaintiffs filed a similar complaint in federal court
based on the same set of alleged facts and the same or similar
causes of action. (ECF No. 1, Compl.) Both parties filed pre-
motion conference letters regarding resolution of the federal
court action. (ECF Nos. 8 & 10.)

The court held a pre-motion conference on June 26,
2019. Plaintiffs announced that they would move for a stay of

the state action and that it would be made by order to show
cause the next day.  Plaintiffs filed their order to show cause
for a stay of the state action on June 27, 2019, and defendants
filed opposition thereto on July 11, 2019, at which time the
motion was submitted for decision.  (ECF No. 23-15, Def. Memo at
4.)  On July 29, 2019, the state court granted the stay "as a
result of the [federal court] action" pending a conference in
state court, scheduled for August 19, 2019.  (ECF No. 21-1, Stay
Order.)  Defendants informed plaintiffs that the stay order
"does not change any of [their] positions or requests on the
motion."  (ECF No. 21, July 29, 2019 Status Letter.)

After the parties filed their motions, this court
heard oral argument on August 12, 2019.

III. **Defendants' Motion for Summary Judgment or for a Stay**
     **and/or Abstention in the alternative.**

Defendants argue that New York state election law
sections 16-100 and 16-102 provide the state court with
jurisdiction over cases arising under the election statute.
(ECF No. 23-15, Def. Memo. at 5.)  Defendants also argue that
the abstention doctrine in *Younger v. Harris*, 401 U.S. 37
(1971), prevents this court from entertaining the action because
hearing the case would undermine the integrity of the state
court proceedings.  (*Id.* at 6-8.)  They further argue that
abstention is warranted under the abstention doctrine in

*Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), because the state court's resolution of this action would moot the issues raised in the federal action. (*Id.* at 8-10.) Defendants also assert that this court should stay or abstain from this action because plaintiffs' commencement of separate state and federal court actions amounts to forum shopping. (*Id.* at 10-11.)

Defendants argue that the court should grant summary judgment in their favor on the merits because the certificate of acceptance requirement has been upheld by the Second Circuit as constitutional and plaintiffs' challenge, therefore, fails as a matter of law. (ECF No. 23-15, Def. Memo. at 12.) Defendants further contend that failure to properly file certificates of acceptance does not create a vacancy that can be filled by a certificate of substitution; nor may the individual who failed to file the acceptance be the substitute candidate. (*Id.* at 20-21.) Defendants also assert that the certificate of substitution claim was untimely filed. (*Id.* at 23.) Finally, defendants argue that the plaintiffs' allegation that plaintiff Klopman was misinformed by Board employees regarding the nomination requirements does not change the outcome of this case. (*Id.* at 23-25.)

Plaintiffs respond that abstention is the exception and that this court should exercise jurisdiction over the

14

action.  (ECF No. 23-18, Pl. Opp. at 5-7.)  They also argue that
*Younger* abstention is limited to situations inapplicable to this
litigation: state criminal prosecution, civil enforcement
proceedings, and civil proceedings involving orders that are
uniquely in furtherance of state courts' ability to perform
their judicial functions.  (*Id.* at 7-10.)  Plaintiffs argue that
*Pullman* abstention also does not apply to this case because
there is no unclear state law at issue and because courts in the
Second Circuit entertain state election law cases even when the
law is ambiguous.  (*Id.* at 10-11.)

     On the merits, plaintiffs argue that they are entitled
to summary judgment or a trial.  (*Id.* at 11.)  They argue that
defendants have not offered any arguments defending their
position on any scrutiny level more searching than rational
basis.  (*Id.*)  Plaintiffs argue that a necessary factual
finding, whether the burden imposed by the Certificate of
Acceptance requirement is trivial, is in dispute.  (*Id.* at 12-
15.)  Plaintiffs further argue that similarly situated major
party candidates are treated differently from candidates from
small parties and independent organizations.  (*Id.* at 15-17.)
They also argue that their claims are timely under either 42
U.S.C. § 1983 or the state election law.  (*Id.* at 17-19.)
Plaintiffs argue that their "official petition carrier['s]"

reliance on representations made by Board employees should be
considered as part of their burden.  (*Id.* at 19-22.)

In reply, defendants maintain that a stay or
abstention is warranted.  (ECF No. 23-19, Reply at 1-4.)  They
respond that there is no due process violation because
plaintiffs do not have a liberty or property interest in an
elected office and the Board properly followed the election law
and procedures regarding potential candidacy. (*Id.* at 4-6.)
Defendants argue that plaintiffs have not proven that similarly
situated people were treated differently by the Board or under
the election law.  (*Id* at 6-7.)  Defendants argue that the
election law survives any tier of scrutiny, weighing the
"trivial, reasonable and non-discriminatory" acceptance
requirement against the state's interest in protecting the
integrity and efficiency of its electoral process by preventing
fraudulent acceptances or declinations, and preventing placement
on the ballot of individuals with no desire to run for office.
(*Id.* at 7-10.)

## IV.  Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that under any level of scrutiny, the
certificate of acceptance requirement as implemented is
unconstitutional and discriminates against local parties and
independent bodies against state-wide and major parties.  (ECF
No. 24-2, Pl. Memo at 10.)  They argue that the certificate of

16

acceptance requirement explicitly treats candidates of independent nominating organizations differently from major party candidates.  (*Id.* at 12-16.)  They contend that the law severely burdens plaintiffs because failure to comply results in wholesale denial of access to the ballot.  (*Id.* at 16-18.)  They argue that strict scrutiny should apply and that a fact-intensive balancing inquiry under *Anderson-Burdick* prevents past case precedent from having "sweeping applicability" to plaintiffs' case.  (*Id.* at 19-20.)

Plaintiffs dispute the applicability of the Second Circuit case *Unity Party v. Wallace*, 707 F.2d 59 (2d Cir. 1983), which previously found the statute at issue to be constitutional.  They argue that the accept or decline letters issued to plaintiffs was less informative than the letter issued in the *Unity Party* case and that *Unity Party* relied on the fact that only one candidate in 1982 failed to properly file a certificate of acceptance, in contrast to the current situation in which there is not clear data regarding how many potential candidates failed to file certificates of acceptance.  (*Id.* at 20-22.)

Plaintiffs also argue that the Second Circuit panel in *Unity Party* "did *not* really consider *Anderson*" and had not received briefing or heard argument regarding *Anderson v. Celebrezze*, 460 U.S. 780 (1983), which was decided three weeks

17

prior to the decision in *Unity Party*. (*Id.* at 23.) They also note that one of the panel members passed away before the decision was issued. (*Id.*) Plaintiffs rely on a later-decided district court case, *Hirschfeld v. Board of Elections in the City of New York*, 799 F. Supp. 394 (S.D.N.Y. 1992), in which a candidate was told that he did not need to perform any additional formalities and therefore did not timely file a certificate of acceptance; the court stated that there was no state policy that would justify denying the candidate's certificate of acceptance, which the candidate filed as soon as he learned of its requirement. (*Id.*) Plaintiffs cite this case as analogous to their situation. (*Id.*)

Plaintiffs also argue that they would prevail on rational basis scrutiny because there is no rational basis or government interest advanced by the state's current regime of requiring strict compliance with the acceptance requirement, in contrast to a scheme in which courts could order *nunc pro tunc* filing, certificates of substitution were accepted by the Board, or notarization of the acceptance forms were not required for a certificate of acceptance. (*Id.* at 26.) Plaintiffs also discuss the history of the acceptance requirement in support of their position. (*Id.* at 26-29.)

In opposition to plaintiffs' motion and in support of defendants' motion, defendants argue that the acknowledgment

requirement of the election law for a certificate of acceptance has to be strictly construed and supports the state's interest in preventing a fraudulent acceptance or declination of a nomination, an interest which has been recognized as a valid state interest by both the New York Court of Appeals and the Second Circuit. (ECF No. 24-50, Def. Opp. at 14-15.) Defendants argue that only plaintiff Klopman claims to have received misleading information regarding the nominations, but that there is no due process issue in this case because (1) there has been no deprivation of life, liberty, or property, (2) negligence of a state actor would not implicate due process, and (3) the plaintiffs have the option to seek expedited judicial review in state court under N.Y. Election Law § 16-102. (*Id.* at 18-19.)

Defendants also argue that the acceptance requirement is rationally connected to the state interest in protecting the integrity, fairness, and efficiency of ballots and the election process. (*Id.* at 20.) Defendants assert that *Unity Party* is on point and controlling. (*Id.* at 21-25.) Defendants distinguish the instant case from *Hirschfeld*, noting that the instant plaintiffs were afforded notice regarding the need to accept their nominations through the May 21, 2019 accept or decline letters. (*Id.* at 27.) Defendants also argue that this action is untimely. (*Id.* at 29.)

In their reply, plaintiffs argue that rational basis is not the appropriate standard governing this case.  (*Id.* at 5-6.)  They assert that the defense has not offered any explanation for the different treatment of independent candidates and that only an intent to keep minor parties from political viability can explain the law.  (*Id.* at 7.)

**LEGAL STANDARD**

## I.  Motion for a Stay and/or Abstention

"The [New York] supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article, which shall be construed liberally."  N.Y. Elec. Law § 16-100.  "The nomination or designation of any candidate for any public office or party position or any independent nomination . . . by reason of a petition for an opportunity to [appear on the] ballot having been filed . . . may be contested in a proceeding instituted in the supreme court by any aggrieved candidate[.]"  N.Y. Elec. Law § 16-102(1).  "A proceeding with respect to a petition shall be instituted within fourteen days after the last day to file the petition, or within three business days after the officer or board with whom or which such petition was filed, makes a determination of invalidity with respect to such petition, whichever is later[.]"  *Id.* § 16-102(2).  "A special proceeding under the foregoing provisions of this article shall

be heard upon a verified petition and such oral or written proof
as may be offered, and upon such notice to such officers,
persons or committees as the court or justice shall direct, and
shall be summarily determined.  The proceeding shall have
preference over all other causes in all courts."  N.Y. Elec. Law
§ 16-116(1).

"[F]ederal courts and state courts often find
themselves exercising concurrent jurisdiction over the same
subject matter, and when that happens a federal court generally
need neither abstain (*i.e.,* dismiss the case before it) nor
defer to the state proceedings (*i.e.,* withhold action until the
state proceedings have concluded)."  *Growe v. Emison*, 507 U.S.
25, 32 (1993).  "[D]eferral, causing a federal court to 'sta[y]
its hands,' [is required] when a constitutional issue in the
federal action will be mooted or presented in a different
posture following conclusion of the state-court case."  *Id.*
(citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496,
501 (1941)).  "Designed to avoid federal-court error in deciding
state-law questions antecedent to federal constitutional issues,
the *Pullman* mechanism remitted parties to the state courts for
adjudication of the unsettled state-law issues.  If settlement
of the state-law question did not prove dispositive of the case,
the parties could return to the federal court for decision of

the federal issues." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76, (1997).

Under the *Younger* abstention doctrine, "federal courts must abstain where a party seeks to enjoin an ongoing, parallel state criminal proceeding, to preserve the 'longstanding public policy against federal court interference with state court proceedings' based on principles of federalism and comity." *Disability Rights New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971)). The *Younger* abstention doctrine was extended to include particular state civil proceedings akin to criminal prosecutions and cases that implicate a state's interest in enforcing the orders and judgments of its courts. *Id.* "In Sprint, the Supreme Court held that *Younge*r's scope is limited to these three 'exceptional' categories – 'ongoing state criminal prosecution,' 'certain civil enforcement proceedings,' and 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)).

## II. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), "and the facts as to which there is no

such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

If the moving party can show that "there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Peterson v. Regina*, 935 F. Supp. 2d 628, 634 (S.D.N.Y. 2013) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To defeat a motion for summary judgment, the non-moving party must identify probative, admissible evidence from which a reasonable factfinder could find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-257 (1986). It

"requires the nonmoving party to go beyond the pleadings and by [his or] her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." 477 U.S. at 261 n.2 (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." 477 U.S. at 248. If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (citations omitted).

## DISCUSSION

### I.  Abstention

*Pullman* abstention is not appropriate here because there is not an unsettled matter of state law regarding the meaning or requirements of the election law.  State court resolution would only moot the federal court as a matter of claim or issue preclusion, answering the same question this court has been asked to determine: whether the election law is constitutional.

*Younger* abstention also is not appropriate here.  None of the circumstances outlined in *Sprint* are present.  There is no parallel criminal proceeding or civil proceeding akin to a criminal prosecution here.  Moreover, this court's ruling regarding the constitutionality of a state statute does not implicate the state court's ability going forward to perform its judicial functions.

Although the election law provides New York state courts with jurisdiction to hear expedited challenges arising under the election law, it does not purport to provide exclusive jurisdiction.  Plaintiffs' decision to commence two lawsuits raising identical issues created the potential conflict between the court systems, but the plaintiffs' litigation strategy does not command that the state suit must proceed ahead of this federal court action, particularly where the plaintiffs asked the state court to stay its case.  Moreover, because the state court has stayed its case in light of the federal action, this court, mindful of the looming deadline to prepare ballots, declines to stay this action.

Having determined that the court will entertain this case, the court considers the merits below.  Plaintiffs assert that the strict requirement of acknowledged acceptances prescribed by N.Y. Election Law Section 6-146(1) is unconstitutional.  As mandated by Section 6-146(1), "[a] person

. . . designated or nominated for a public office other than a judicial office by a party of which he is not a duly enrolled member, or if designated or nominated for a public office other than a judicial office by more than one party or independent body or by an independent body alone, . . . shall, in a certificate signed and acknowledged by him, and filed as provided in this article, accept the designation or nomination as a candidate of each such party or independent body other than that of the party of which he is an enrolled member[;] otherwise such designation or nomination shall be null and void." N.Y. Elec. Law § 6-146(1). *See also* N.Y. Elec. Law § 1-106(2) ("The failure to file any petition or certificate relating to the designation or nomination of a candidate for party position or public office or to the acceptance or declination of such designation or nomination within the time prescribed by the provisions of this chapter shall be a fatal defect.").

## II.  Due Process

Plaintiffs assert in their complaint that "by explicitly telling plaintiffs that there were no further formalities or filings necessary, defendants independently deprived Plaintiffs of due process of law by stopping their inquiries into any further formalities."  (ECF No. 1, Compl. at 7.)

"[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides [a] meaningful post-deprivation remedy." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.*

"[A]fter the Board's action, [there is] the opportunity to obtain full judicial review under New York Election Law section 16-102, which provides for expedited proceedings as to designations." *Id.* at 467. This is an adequate post-deprivation remedy that "satisfies due process." *See id.; see also Dekom v. Nassau Cty.*, 595 F. App'x 12, 14 (2d Cir. 2014) ("As we held in *Rivera-Powell v. N.Y.C. Board of Elections,* 470 F.3d 458 (2d Cir.2006), New York Election Law § 16-102 provides an adequate post-deprivation remedy for random and unauthorized deprivations of due process in disputes over failure to list a candidate's name on the ballot in a New York election.").

Although the parties dispute the substance of the conversations surrounding the nominating petitions, which dispute the court finds to be immaterial, plaintiffs appear to assert that the allegedly misleading statements were made in response only to Klopman's questions, rather than that the state has a policy of volunteering misleading information. Defendants explain that board employees are instructed not to furnish advice regarding compliance with the election law. Thus, assuming Klopman's statements are true, any state misconduct that may have occurred would be random and unauthorized, and the existence of a post-deprivation remedy, of which plaintiffs availed themselves by filing a state court action, satisfies procedural due process. And if the defendants' version of Klopman's interactions with Board employees is true, there is no due process violation.

The court, therefore, grants summary judgment in the defendants' favor on the due process claim.

## III. Associational Rights and Equal Protection

Plaintiffs argue that the defendants' actions violated their equal protection and first amendment rights. (ECF No. 1, Compl. at 7-9.) "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983).

"The laws at issue . . ., according to plaintiffs, place discriminatory burdens on minor political parties." *Green Party of New York State v. New York State Bd. of Elections*, 389 F.3d 411, 420 (2d Cir. 2004). "As the alleged violations of the plaintiffs' First Amendment rights form the basis of both the First Amendment and Fourteenth Amendment claims, we are faced with a situation where the plaintiffs' First Amendment claims substantially overlap with their equal protection claims. Accordingly, the analyses of plaintiffs' claims under the two amendments also substantially overlap." *Id.*

Over thirty years ago, in *Unity Party v. Wallace*, 707 F.2d 59 (2d Cir. 1983), the Second Circuit ruled that N.Y. Elec. Law Section 6-146, the acknowledged acceptance requirement statute, is constitutional. "At issue [was] whether the State, pursuant to this statute, [could] constitutionally deny a nominee for office a place on the ballot for his failure to file timely an acknowledged acceptance." *Id.*

After candidate Rhodes filed his nominating petition with a sufficient number of signatures, the election board's director "sent a letter to Rhodes informing him that the Board had received the Unity Party's nominating petition, and that '[p]ursuant to Section 6-158 of the Election Law ... the last date to accept or decline said nomination by duly acknowledged document is September 10, 1982' (emphasis added)." *Id.* at 60–

61.  By a letter sent on September 9, Rhodes stated that he was accepting the nomination.  *Id.* at 61.  He was informed on September 20 that his nomination was invalid due to his failure to comply with the acknowledgment requirement in Section 6-146(1).  *Id.*  Rhodes immediately tried to resubmit his earlier letter with an acknowledgment appended.  *Id.*  However, per Section 1-106(2), his failure to file a timely acceptance was a fatal defect.  *Id.*  Rhodes subsequently brought actions in state and federal court.  *Id.*

The Unity Party, Rhodes, and his supporters argued that Section 6-146 "impermissibly burden[ed] their First and Fourteenth Amendment Rights both of political association and voting" and that the statute "improperly discriminat[ed] against small political parties, their candidates, and [their supporters]" in violation of the Equal Protection Clause.  *Id.*  The Second Circuit stated that it "must . . . examine the nature, extent, and likely effect of the law on the interests of those claiming to be fenced out by it."  *Id.* at 61 (citing, among other cases, *Anderson v. Celebrezze*, 460 U.S. 780 (1983)).

"Under the Election Law a 'party' is defined as a political organization which polled at least 50,000 votes for its gubernatorial candidate in the last preceding election." *Id.* at 62 (citing N.Y. Elec. Law § 1-104(3)).  "An 'independent body' is a nominating group or organization which is not a

'party' under section 1–104(3)." *Id.* (citing § 1–104(12)). The election law establishes different procedures according to the nature of the nominating organization and the office. *Id.* For example, "party" senatorial candidates are ordinarily nominated through the primary election process, whereas independent nominations are made by petition. *Id.* Simply obtaining signatures does not guarantee one a place on the ballot. *Id.*

"What the Constitution condemns are restrictions that, without compelling justification, significantly encroach upon the rights to vote and to associate for political purposes." *Id.* at 62. Section 6-146(1) did not place a weighty burden on the plaintiffs, as they had the alternative of casting write-in ballots. *Id.* Regardless, the Second Circuit found that "any encumbrance on appellants' rights to vote and politically associate [was] at best *de minimis* and New York [could] justify the restriction by advancing a rational basis for it." *Id.*

Considering the effect of Section 6-146(1) on Rhodes's candidacy, "[n]othing before [the court] indicate[d] that compliance with the acknowledged acceptance requirement [was] difficult." *Id.* There was no evidence that compliance was "time-consuming, complex or impose[d] any financial hardship," and Rhodes was the only person out of 148 candidates required to file a timely acknowledged acceptance who failed to do so in 1982. *Id.* Two candidates for the Unity Party complied and were

on the ballot. *Id.* "Only the 'careless or inadvertent failure

to follow the mandate of the statute,' . . . is what g[ave] rise

to Rhodes' complaint[.]" *Id.* "New York did not erect some sort

of ponderous portcullis barring access to the ballot that

triggers heightened scrutiny to justify it. Instead, the

restriction [was] no more than a flimsy wicket kind of bar—an

insignificant hurdle." *Id.*

As for equal protection, "not all minor variations in

the application of a state's laws to different groups violate

the Fourteenth Amendment's command." *Id.* at 63. "The impact of

Section 6-146(1) concededly [fell] somewhat more heavily upon

independent and minor party candidates than on major party

candidates," a difference which arose from the election law's

distinction between a "party" and an "independent body." *Id.*

But the acknowledged acceptance requirement applied not only to

candidates nominated by independent bodies, but also to

candidates nominated by parties in which they were not members

or nominated by multiple parties. *Id.*

The Second Circuit in *Unity Party* also noted that

Section 6-146 does not create a classification that so heavily

weighed down independent candidates or small parties, as had the

burdens in other cases, that strict scrutiny was required. *Id.*

Additionally, the court noted that the statute does not employ a

scheme based on a suspect classification such as race or

economic status.  *Id.*  "[B]y enacting § 6-146(1), New York did
not hang a millstone around the necks of small or minor
political parties to sink them in discriminate fashion,
violative of their Fourteenth Amendment rights."  *Id.*

        "When the nature and extent of the statute and its
effect on the interests of those claiming to be impacted by it
are looked at realistically, neither of the two constitutional
avenues of argument raised by appellants mandates heightened
scrutiny.  The challenged restriction is subject only to a
rational basis analysis."  *Id.*  New York had a "legitimate, even
compelling, interest, in protecting the integrity and efficiency
of its electoral process[.]"  *Id.*  The requirement of an
acknowledged acceptance reflected the legislative purpose of
preventing election fraud.  *Id.*

        The Second Circuit noted that nominees from major
parties are ordinarily chosen at party conventions or primaries
and have already publicly accepted their nominations when
winning the nomination.  *Id.*  Thus, there was no concern
regarding fraudulent acceptances or declinations after the
"thorough public screening" experienced by those party
candidates.  *Id.*  By contrast, independent body candidates do
not face the same public scrutiny and state ballots could become
unnecessarily crowded and confused with nominees who have no
express desire to run for office absent an acknowledged

acceptance requirement. *Id.* at 63-64. "The statute's difference in treatment thus arises rationally from a difference in the electoral process and constitutes no denial of equal protection." *Id.* at 64.

In subsequent cases, the Second Circuit does not appear to have questioned *Unity Party*'s continuing validity. *See, e.g.*, *Schulz v. Williams*, 44 F.3d 48, 55 (2d Cir. 1994) ("The [*Unity Party*] court rightly concluded that this 'flimsy wicket" of a requirement [that candidates of independent bodies file in a timely manner a form acknowledging their acceptance of a nomination secured by petition] imposed only a *de minimis* burden on voters' rights . . . .").

In addition to the existence of circuit precedent on the identical issue presented by the instant action, this court also relies on Supreme Court precedent to guide its analysis. In *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), a case cited by neither of the parties here, the Supreme Court held that a state antifusion law does not violate the First and Fourteenth Amendment. *Id.* at 354. The state antifusion law in *Timmons* prevented candidates from appearing on the ballot under multiple parties, even when the candidate accepted the nomination of an additional party, and the candidate's primary party did not object to the candidate's acceptance of additional nominations. *Id.* at 354-55.

"When deciding whether a state election law violates First and Fourteenth Amendment associational rights, [courts] weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id.* at 358 (citing *Anderson* and *Burdick v. Takushi*, 504 U.S. 428 (1992)). "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (citations and internal quotation marks omitted).

"That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Id.* at 359. As the court in *Timmons* recognized, *Burdick* explicitly stated that "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable." *Id.* (citing *Burdick*, 504 U.S. at 440, n. 10). The law in question did "not directly preclude[] minor political parties from developing and organizing[,]" nor did it "exclude[] a particular group of citizens, or a political party,

from participation in the election process." *Id.* at 361. The minor party "remain[ed] free to endorse whom it likes, to ally itself with others, to nominate candidates for office, and to spread its message to all who will listen." *Id.*

The Supreme Court was "unpersuaded . . . by the party's contention that it ha[d] a right to use the ballot itself to send a particularized message, to its candidate and to the voters, about the nature of its support for the candidate. Ballots serve primarily to elect candidates, not as forums for political expression." *Id.* at 362-63. Similar to the EH Fusion Party, the party in *Timmons* "retain[ed] great latitude in its ability to communicate ideas to voters and candidates through its participation in the campaign, and party members [could] campaign for, endorse, and vote for their preferred candidate even if he [was] listed on the ballot as another party's candidate." *Id.* at 363.

Given the burden imposed, the state's "asserted regulatory interests need[ed] only be 'sufficiently weighty to justify the limitation' imposed on the party's rights" and "elaborate, empirical verification of the weightiness of the state's asserted justifications" was not required. *Id.* at 364. The Supreme Court recognized that "states certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing

public officials," including the prevention of fraudulent candidacies and misrepresentation. *Id.* at 364-65. "And while an interest in securing the perceived benefits of a stable two-party system will not justify unreasonably exclusionary restrictions, . . . States need not remove all of the many hurdles third parties face in the American political arena today." *Id.* at 367.

Even if the Second Circuit's decision in *Unity Party* did not control this court's decision here, the reasoning in *Timmons* also suggests that New York's election law is constitutional. As in *Timmons*, the plaintiffs in this action are not severely burdened by their inability to have their candidates of choice placed on the ballot with an EH Fusion Party designation, nor are they severely burdened by a requirement that they accept their nominations to be placed on the ballot. Plaintiff Klopman stated in her declaration that the EH Fusion Party was formed to "express that various formerly adversarial political forces . . . have joined forces to oppose a political machine" and that EH Fusion "gives context to [their] organizied political efforts and informs voters of the stakes." (ECF No. 24-29, Klopman Decl. ¶ 4.) She further stated that the plaintiffs sought to "formally create an 'EH Fusion Party' ballot line, giving voters critical information as to the nature of [their] joint political efforts.'" (*Id.* ¶ 8.)

The Supreme Court has explained that the purpose of the ballot is to elect candidates, not to serve as a forum for political expression. EH Fusion has three candidates on the ballot affiliated with the group and all but two of the named plaintiffs are on the ballot associated with multiple other established political parties. EH Fusion can still promote these candidates and these candidates can communicate the group's message.

Given that there is no severe burden, the state's interest need only be of sufficient weight to justify the limitation imposed on the party. The state has asserted its desire to protect the integrity and efficiency of its electoral process by preventing fraudulent acceptances or declinations and placement on the ballots of people with no desire to run for office. These are interests the Supreme Court recognized as valid state interests in *Timmons*. Plaintiffs argue that information concerning the number of people who failed to comply with the acceptance requirement could implicate whether the state's interest is valid, as opposed to a smokescreen for a secret motivation to keep small parties and independent parties off the ballot. But the Supreme Court has stated that "elaborate, empirical" evidence is not required. Moreover, this litigation itself demonstrates how the acceptance requirement supports the state's interest.

Each individual plaintiff received an accept or decline letter on May 21, 2019. The candidates now assert that they were confused and should be allowed to rectify their mistake, suggesting that the Board should not have construed their non-compliance as meaningful, while presumably still validating the responses that timely and properly responded to the accept or decline letters and complied with Section 6-146. Although all the plaintiffs failed to file acknowledged acceptances for the EH Fusion party (in contrast to filing acknowledged acceptances regarding their nominations for multiple other parties), two of the three EH Fusion candidates who are not plaintiffs (Massa and Nielsen) properly accepted their nominations and will be on the ballot.[3] Stephen Lynch, who was named in the nominating petition and is no longer associated with the EH Fusion party, properly declined his nomination. Although the court need not accept plaintiff Klopman's explanation as true, given the questionable relevance and multiple layers of hearsay upon which she relies, Klopman has asserted that Lynch declined his EH Fusion nomination in order to preserve his future eligibility as a nominee for the Democratic Party. Assuming for the sake of argument that

---

[3] The third candidate who will be associated with the Fusion party, Rana, did not have to formally accept because the acceptance requirement does not apply to judicial candidates. *See* ECF No. 24-6, Rana Decline Letter ("The last day to Decline such nomination is Friday, May 32, 2019.").

Klopman's assertion is correct, though Lynch was at liberty to decline his nomination for any reason, Lynch's decision to avoid the adverse consequences of affiliating with the EH Fusion Party demonstrates precisely why reliance on the nominating petitions alone is insufficient. Although plaintiff Kinsella filed an acceptance, it was not acknowledged as required. But considering that accepting a nomination can have adverse consequences, as asserted by plaintiff Klopman regarding Lynch, it is sensible for the state to ensure that a potential candidate actually personally accepts the nomination, which is accomplished by the acknowledgment requirement of Section 6-146.

Plaintiffs argue that the certificate of acceptance requirement is a burden that is unique to independent bodies. This is inaccurate. Certificates of acceptance must be filed not only by individuals wishing to run under the banner of an independent body, but also by anyone wishing to run as a candidate for a party in which the person is a not a member. This means, by definition, that established parties require certificates of acceptance for at least some of their candidates to accept party nominations. Indeed, plaintiffs in this case filed certificates of acceptance for placement on the ballot for multiple parties in which they may not be members.

Although the Supreme Court has recognized that failure to have one's candidate on the ballot is not a severe burden,

this court also addresses the relationship between an acceptance requirement and independent bodies.  As the *Unity Party* decision notes, established parties, through their primaries, conventions, and caucuses provide their own party candidates the opportunity to be informed of and accept their nominations. Rather than limiting elections to members of major established parties, New York has established a system in which people may be nominated for office outside of their own party or any established party, and the acknowledged certificate of acceptance is the equivalent method of formal acceptance.  The state certainly has an interest in attempting to ensure that all candidates accept (or reject) their nominations and that candidates are not compelled to run for office or forced into political associations, whether through the party process and the party's own rules, or by an acknowledged acceptance for candidates unaffiliated with an established party.

Plaintiffs' argument, in essence, that New York must provide two bites at the apple for candidates who fail to research, be informed of, and comply with the election law is unpersuasive.  Plaintiffs here have attempted to assert a constitutional violation, based on their own admitted mistake (*see* ECF No. 23-17, Pl. 56.1(b) Statement ¶ 10), that is, the failure to file forms they had previously filed in the same election cycle for other party nominations and that other

41

nominated members of their EH Fusion party filed timely and correctly.  Moreover, plaintiffs appear to assert that a statutory framework that allows candidates to run for office outside of their membership in a major party is evidence that the creation of rules governing such a framework is constitutionally suspect on equal protection grounds.  Not so. Rather, plaintiffs failed to accept their nominations via the mechanism that allows potential candidates to temporarily associate with established parties they have chosen not to formally join, to associate with independent political organizations that are not established political parties (and otherwise could never run candidates under their name), and to avoid being forced into association with an organization on the ballot at the whim of petition signature collectors.  The classification of being an independent body does not unconstitutionally burden such organizations, their candidates, or their members.  And, as the *Unity Party* court noted, this is not a scheme that relies on suspect classifications like race.

Finally, the plaintiffs' reliance on *Hirschfeld* is misplaced.  Whatever the actual nature of the conversation Klopman had with Board employees during her two trips to Board's office, the court relies on the material fact that each plaintiff received an accept or decline letter.  These letters, and not the subsequent letters notifying the plaintiffs of

invalidation, served as their notice that action needed to be taken to accept their EH Fusion Party nominations. The letters provided plaintiffs with notice that they needed to accept or decline their nominations by a date certain, and plaintiffs bore the responsibility of complying or seeking further information if needed.

Plaintiffs have not established that the strict acknowledged acceptance requirement of Section 6-146 violates their First or Fourteenth Amendment rights. Accordingly, the defendants are entitled to summary judgment.

## IV.   Certificate of Substitution

To the extent that plaintiffs maintain their claim that the board violated New York's election law by rejecting plaintiffs' certificates of substitution, plaintiffs' claim is denied. "Under Election Law § 6-148, a valid nomination is a prerequisite to the creation of a vacancy." *Testa v. Ravitz*, 84 N.Y.2d 893, 895, 644 N.E.2d 1348 (N.Y. 1994). No vacancies were created because there were no valid nominations.

## CONCLUSION

For the foregoing reasons, the court denies defendants' motion for a stay and/or abstention, grants defendants' motion for summary judgment, and denies plaintiffs' motion for summary judgment. The Clerk of Court is respectfully directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED.**

Dated:     August 13, 2019
             Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York
